IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**JEFFREY JEROME WALKER,**
   **Plaintiff,**

vs.                       5:05cv75/SPM/MD

**ROBERT POWELL,**
   **Defendant.**

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon the defendants' special report (doc. 26) filed on June 23, 2006. The pro se plaintiff, who is proceeding *in forma pauperis* in this action,[1] filed a response in opposition to the special report which was docketed on August 14, 2006 (doc. 34). On August 16, 2006, this court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special reports would be construed as motions for summary judgment as of September 18, 2006 and providing the parties thirty days in which to submit additional Rule 56 materials. (Doc. 35). Plaintiff filed a supplemental response. (Doc. 36).

Upon review of the submissions of the parties, it is the opinion of the undersigned that the defendant's motion for summary judgment should be denied.

---

[1] Court records reflect that no initial partial filing fee was assessed, and plaintiff has not made any payments to the court. Therefore, plaintiff still owes $250.00, the entire filing fee at the time he filed this action.

## Background

Plaintiff was incarcerated at Washington Correctional Institution ("WCI") at the time of the events giving rise to this complaint. Named as the sole defendant in this action is Robert Powell, who, at the time of the events described in plaintiff's complaint was an employee of Aramark Correctional Services, Inc. ("Aramark"), which has contracted with the State of Florida Department of Corrections ("DOC") to provide food service operations at institutions and other facilities owned and operated by the DOC.[2]

In his complaint (doc. 1),[3] plaintiff alleges that he arrived at WCI on May 7, 2003 weighing approximately 180 pounds, but that by 2005 when he filed his complaint he weighed only 140 pounds.[4] He alleges that his weight loss is due to nutritionally inadequate meals provided at WCI.[5] He maintains that he suffers from headaches, hunger pains and constant fatigue. He also states that there are no medical or other reasons for this extreme weight loss, as he has no serious illness and has not performed any strenuous labor. He contends that the defendant Robert Powell[6] has no formal training as a cook, food preparer or culinary supervisor and that plaintiff is essentially suffering from starvation as a result of the nutritionally and quantitatively inadequate meals with which he has been provided under the

---

[2] An unsigned copy of Aramark's contract with the DOC is appended to defendant's motion for summary judgment.

[3] The allegations in this complaint were sworn under penalty of perjury, although the complaint does not bear a specific date.

[4] As of December 15, 2006, the DOC Corrections Offender Network website indicates that plaintiff's weight is 156 pounds. See:
http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=4&From=list&SessionID=330736485.

[5] Plaintiff's complaint includes numerous specific allegations about food service practices which are alleged to have resulted in decreased and inadequate nutrition for inmates. Plaintiff claims that the defendant's actions are done "maliciously," although he later contends that these things were done as a cost-saving measure. (Doc. 34 at 4).

[6] There was originally some confusion about the identity of the correct defendant in this action, but the parties now agree that Robert Powell is in fact the proper defendant. (See doc. 11, 14, 15 17, 18 19).

defendant's supervision. As relief he requests money damages and that the defendant be required to make certain changes to the food service program to ensure adequate nutrition for the plaintiff and other inmates.

In defendant Powell's special report,[7] he argues that plaintiff's complaint is frivolous and fails to state a claim upon which relief may be granted. He explains that he is presently an employee of the Florida Department of Corrections assigned to the food service department at WCI, although at all times relevant to the complaint he was an employee of Aramark. Defendant worked as both the line supervisor and later the production supervisor in the food service department at WCI during the relevant time period.

The special report states that WCI houses approximately 1,250 inmates, 1,000 of whom are housed in close confinement, as is the plaintiff. The food services department prepares and serves three meals a day to all WCI inmates, and also prepares and serves meals to staff at the institution, other DOC employees and Aramark employees. The special report states that meals are prepared based on the daily caloric intake prescribed for each inmate and any other special dietary requirements the inmates might have, such as Kosher, vegan, Muslim, etc. The menus are set in accordance with a "Master Menu" promulgated by the DOC, and food is prepared in accordance with the recipes set forth therein. Inmates actually prepare the meals under the supervision of Aramark employees and corrections officers employed by DOC. However, corrections officers inspect the food service operation, including food being prepared and food waiting to be served, at least once per shift to ensure that it is fresh and being served at the correct temperature. Aramark employees, in turn, check the food for temperature and freshness at least five times during the process of preparing and serving each meal. (Doc. 26 at 2-3).

---

[7] Defendant has not submitted an affidavit in support of the motion for summary judgment/special report, and he has not sworn that the statements made in the special report are made under penalty of perjury. Furthermore, although the defendant's failure to submit any affidavits was noted in the court's order of July 13, 2006 (doc. 32), the defendant did not rectify this omission prior to the submission date of the instant motion.

Inmates in open population, those in close confinement, and corrections officers all consume food from the same source.  Meals for inmates in close confinement are requested by the corrections officers in charge of each housing unit.  The appropriate number of trays of each kind of meal are loaded on a cart and delivered to the housing units for distribution.  These meal trays do not identify the inmate who is to receive each meal, except for inmates receiving Kosher meals, because such inmates are required to sign for their meals.  Defendant states that neither he nor any Aramark employee in food service has any way of knowing which tray will go to which inmate, and that once the trays leave the food service department, neither defendant nor any Aramark employee in food service has any control over what happens to each tray of food, what condition the food is in when it reaches an inmate or even whether it is given to the inmate at all.  (Doc. 26 at 3).

Leftover food is handled according to regulations set forth by the DOC, which allow cooked food to be kept for three days and leftover meat to be frozen and kept for 30 days.  The defendant states in the special report that it is "common" for leftover food to be served in the staff dining room.

Defendant, as an Aramark employee, did not have any contact with inmates housed in close confinement, and he states that to his knowledge he has never met plaintiff, did not know where plaintiff is housed and does not know what diet has been prescribed for the plaintiff.  (Doc. 26 at 4)

In plaintiff's response to the special report, which also was not sworn under penalty of perjury, he contradicts many of the "factual assertions" made in the defendant's special report. (Doc. 34).  He indicates, for instance, that the defendant had seen the plaintiff at least four days a week during the alleged deprivations, and that plaintiff had even complained directly to the defendant on numerous occasions.  Plaintiff also states that the assertions regarding the ratio of open population inmates to close management inmates is erroneous, as was the defendant's assertion that plaintiff was housed in close management during the time in question.

Attached to the plaintiff's response are affidavits from ten inmates.  Six inmates attest to having lost weight when they were eating only at the chow hall at WCI, unable to supplement their caloric intake with canteen purchases, and each mentions specific alleged deficiencies in the food service program.  Three inmates describe food preparation practices in which recipes were altered, reduced, or "stretched," leading to an alleged decrease in nutritional value, and one inmate attested to receiving a nutritionally and calorically inadequate diabetic diet. Plaintiff asserts that defendant Powell allowed such practices because his goal was to cut food service costs at inmates' expense.  Plaintiff  acknowledges in his response that the defendant had no way to single out his tray for deficiencies, but claims that the defendant's acts were directed at, and affected, the entire inmate population.

## Legal Analysis

### Summary Judgment Standard

On a motion for summary judgment, this court must  evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendant's motion only if the record demonstrates that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56.  The court must resolve all disputes and draw all inferences in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); see also *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir.1999).  Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact."  *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).  An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Miller v. Harget,* 458 F.3d 1251, 1256 (11th Cir. 2006); *Bischoff v. Osceola County,* 222 F.3d 874, 876 (11th Cir. 2000); *Harris v. Ostrout*, 65 F.3d 912, 916-17 (11th Cir. 1995); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

### Frivolousness Standard

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

### Failure to State a Claim Standard

Dismissals for failure to state a claim are governed by Federal Rule of Civil Procedure 12(b)(6). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *Davis v. Monroe County Bd. Of Educ.,* 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed only if it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

### Eighth Amendment Standard

Plaintiff's claim that he received nutritionally and quantitatively inadequate food while at WCI arises under the Eighth Amendment's proscription on cruel and unusual punishment. Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. *Farmer v. Brennan*, 511

U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined. *Hellig v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted)). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996), amended by 135 F.3d 1318 (9th Cir. 1998); *Lunsford v. Bennett*, 17

F.3d 1574, 1580 (7th Cir. 1994); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (*quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977); see also *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The Constitution requires that prisoners be provided "reasonably adequate food.")

There is both an objective and subjective component of a viable Eighth Amendment claim. The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981))), *cert. denied*, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001).

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325)("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291).

**Conclusions of Law Regarding Material Facts**

It is undisputed that, during all times relevant to the complaint, Aramark provided food service operations to WCI pursuant to a contract with the DOC; that Aramark's obligations under the contract included preparing and serving meals to inmates; and that defendant Powell was a supervisory employee of Aramark. It also appears to be undisputed that the Master Menu at WCI, if followed with properly prepared food, provides nutritionally adequate diets. The subject of plaintiff's complaint, however, is the nutritional adequacy of the diet that the inmates actually consume.

Turning to the objective component of the Eighth Amendment analysis, and construing the allegations of plaintiff's complaint and response in a light most favorable to him, he alleges that over a prolonged period defendant Powell has persistently provided food to inmates which does not meet the minimal nutritional standards. He further alleges that the food that is served is "watered down" or "stretched" using nutritionally inadequate ingredients; his consumption of this food over time has resulted in severe weight loss such that he is essentially being "starved to death" and adverse physical effects; that other inmates who also are unable to supplement their diets with canteen purchases have also lost weight; and that inmates who work in food services have directly witnessed the cost (and nutrient) cutting measures. In assessing whether plaintiff's allegations constitute an objectively serious deprivation, the court is guided by the principle that, "[i]n general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Deapain v. Uphoff*, 264 F.3d 965, 974, (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 1999)); *see also Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994). Viewing the evidence in the

summary judgment record in a light most favorable to plaintiff, he sufficiently alleges a deprivation severe enough to violate the Eighth Amendment.

With regard to the subjective component, plaintiff repeatedly alleges in his complaint that the defendant acted "maliciously," although neither the source nor the target of the malice is identified.  In his response to the summary judgment motion, plaintiff contends that in defendant's position as line supervisor, he had personal involvement in and control over the food quantities served as well as the products used to prepare meals.  Plaintiff indicates his belief that defendant was motivated by a desire to cut costs, and in so doing he was arguably deliberately indifferent to the adverse effects of the cost-cutting measures on the inmate population. (Doc. 34 at 4).  Plaintiff notes that since 2003 food service workers have been directed to alter recipes from the Master Menu for things as varied as grits, pancakes, instant potatoes, juice, and meat-based meals such that their nutritional value is markedly diminished, to serve food to inmates in such a way that it is "stretched," and to serve small portions.  Defendant Powell, in his supervisory role, was aware of and in a position to correct these problems, but failed to do so.  *See Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) ("[t]he necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1234-35 (11th Cir. 2003) (internal quotation marks and citation omitted).

Defendant acknowledges that consistently serving an inmate inadequate quantities of food may rise to the level of an Eighth Amendment violation, but despite the myriad specific examples offered by plaintiff in his complaint, maintains that plaintiff's complaint does not allege facts sufficient to make this determination. Defendant claims, without support, that if plaintiff was ever served inadequate quantities of food, it must have occurred with such infrequency as to be a random event, and could not be said to have violated any standards of common decency.

He also claims that the subjective prong of the Eighth Amendment test cannot be established because plaintiff will never be able to prove that defendant was deliberately indifferent to plaintiff's needs in light of the fact that defendant does not know plaintiff, who he is or where he is housed. Plaintiff makes clear in his response, however, that he is not contending that the defendant singled him out, but rather that the defendant's actions affected the entire inmate population, of which he was a part. Defendant further argues that plaintiff will be unable to prove deliberate indifference because "[plaintiff's] diet is determined by the DOC medical staff and what, when and how he eats is determined by DOC's policies and regulations without defendant's involvement and which are completely outside defendant's control." (*Id.*). To support this assertion, he presumably relies on the contract between Aramark and the DOC. However, plaintiff is not complaining about the menu, the timing of his meals or the manner in which he is required to consume them. Plaintiff's complaints concern defendant's knowing preparation and provision of food that is nutritionally inadequate such that it has adversely affected his health.

Defendant asserts that plaintiff's allegations, balanced against the "facts" set forth in the special report, make it clear that plaintiff has not alleged and will not be able to prove an Eighth Amendment violation. The special report makes reference to defendant's "sworn statement" (doc. 26 at 5), but no such statement has been filed with the court, either from the defendant or any other individual with personal knowledge of the facts as indicated by Rule 56 of the Federal Rules of Civil Procedure. Thus, defendant Powell has not presented affirmative evidence raising a genuine dispute as to several material facts alleged in the complaint. For instance, the record does not clearly establish whether the so-called Master Menu recipes were followed, and if they were not, what effect this had on the nutritional adequacy of meals served at WCI, whether the plaintiff suffered weight loss as a result of nutritionally deficient meals and even what role the defendant played. Moreover,

defendant has not submitted evidence to support any of the factual assertions of his special report that go beyond the matters set forth by the unsigned contract.

The allegations of plaintiff's complaint sufficiently establish, and the Rule 56 materials he has submitted amplify, that defendant is aware of the complaints of plaintiff and others about nutritionally inadequate meals, that "Master Menu" recipes were being altered to "stretch" foods, and that defendant had some authority or control over the situation. Reviewing the record in the light most favorable to the plaintiff, granting summary judgment at this juncture and on the record currently before the court would be improper.

## CONCLUSION

Upon full consideration of the evidence within the summary judgment record, the court concludes that plaintiff's complaint is not frivolous, and that plaintiff has presented allegations which, liberally construed in a light most favorable to him, state an Eighth Amendment violation against defendant. Defendant Powell's argument that because he and Aramark are subject to the terms of the contract it is implausible that plaintiff could have experienced the conditions of which he complains, does not alter this conclusion.

Accordingly, it is respectfully RECOMMENDED:

That defendant's special report, construed as a motion for summary judgment (doc. 26) be DENIED, and that this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 19th day of December, 2006.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

*Case No: 5:05cv75/SPM/MD*

## **NOTICE TO THE PARTIES**

      **Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636;** *United States v. Roberts,* **858 F.2d 698, 701 (11th Cir. 1988).**