**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**JEFFREY JEROME WALKER,
    Plaintiff,**

**vs.                                                                                5:05cv75/MD**

**ROBERT POWELL,
    Defendant.**

---

## ORDER

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon the defendant's motion to dismiss or, alternatively, for summary judgment (doc. 78) to which the plaintiff has responded. (Doc. 89 & 97).

Plaintiff, an inmate proceedings pro se, filed this complaint pursuant to 42 U.S.C. § 1983 in April of 2005. (Doc. 1). The defendant was directed to file a special report, which, after response from the plaintiff, was subsequently construed as a motion for summary judgment, and was denied. (Doc. 26, 34, 36, 37, 38).[1] The parties filed pre-trial narratives and pre-trial stipulations (doc. 51, 55, 63, 65, 68, 77), defendant filed the instant "motion to dismiss or for summary judgment," and at a

---

[1] The motion was denied, in part, because defendant had not presented affirmative evidence raising a genuine dispute as to several material facts alleged in the complaint, and he had not submitted evidence, such as an affidavit, that would support any of the factual assertions contained in the special report. (Doc. 37 at 11, 12). This court further found that "[t]he allegations of plaintiff's complaint sufficiently establish, and the Rule 56 materials he has submitted amplify, that defendant is aware of the complaints of plaintiff and others about nutritionally inadequate meals, that "Master Menu" recipes were being altered to "stretch" foods, and that defendant had some authority or control over the situation." (Doc. 37 at 12).

pre-trial conference held before then-presiding District Judge Stephan Mickle, both parties consented to the exercise of magistrate judge jurisdiction. (Doc. 84).

**Background**

Plaintiff was incarcerated at Washington Correctional Institution ("WCI") at the time of the events giving rise to this complaint. Named as the sole defendant in this action is Robert Powell, who, at the time of the events described in plaintiff's complaint was an employee of Aramark Correctional Services, Inc. ("Aramark"). Aramark has a contract with the State of Florida Department of Corrections ("DOC") to provide food service operations at institutions and other facilities owned and operated by the DOC.[2]

In his complaint (doc. 1),[3] plaintiff alleges that he arrived at WCI on May 7, 2003 weighing approximately 180 pounds, but that by 2005 when he filed his complaint he weighed only 140 pounds.[4] He alleges that his weight loss is due to nutritionally inadequate meals provided at WCI.[5] He maintains that he suffers from headaches, hunger pains and constant fatigue. He also states that there are no medical or other reasons for this extreme weight loss, as he has no serious illness

---

[2] An unsigned copy of Aramark's contract with the DOC is appended to defendant's first motion for summary judgment. (Doc. 26).

[3] The allegations in this complaint were sworn under penalty of perjury, although the complaint does not bear a specific date. The court recites the allegations as though they are ongoing, although as noted herein, plaintiff has since regained all of the weight he allegedly loss as a result of the nutritional inadequacies in the food he was served.

[4] As of December 15, 2006, the DOC Corrections Offender Network website indicates that plaintiff's weight is 156 pounds. See:
http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=4&From=list&SessionID=330736485. As of November 13, 2007, plaintiff's weight was recorded as 180 pounds. See:
http://www.dc.state.fl.us/ActiveInmates/detail.asp?Bookmark=4&From=list&SessionID=207926321.

[5] Plaintiff's complaint includes numerous specific allegations about food service practices which are alleged to have resulted in decreased and inadequate nutrition for inmates. Plaintiff claims that the defendant's actions are done "maliciously," although he later contends that these things were done as a cost-saving measure. (Doc. 34 at 4).

and has not performed any strenuous labor. Plaintiff contends that the defendant Robert Powell[6] has no formal training as a cook, food preparer or culinary supervisor and that he is essentially suffering from starvation as a result of the nutritionally and quantitatively inadequate meals with which he has been provided under the defendant's supervision. As relief he requests money damages and that the defendant be required to make certain changes to the food service program to ensure adequate nutrition for the plaintiff and other inmates.

In defendant Powell's special report,[7] he argues that plaintiff's complaint is frivolous and fails to state a claim upon which relief may be granted. He explains that he is presently an employee of the Florida Department of Corrections assigned to the food service department at WCI, although at all times relevant to the complaint he was an employee of Aramark. Defendant stated that he worked as both the line supervisor and later the production supervisor in the food service department at WCI during the relevant time period.

The special report states that WCI houses approximately 1,250 inmates, 1,000 of whom are housed in close confinement, as is the plaintiff. The food services department prepares and serves three meals a day to all WCI inmates, and also prepares and serves meals to staff at the institution, other DOC employees and Aramark employees. The special report states that meals are prepared based on the daily caloric intake prescribed for each inmate and any other special dietary requirements the inmates might have, such as Kosher, vegan, Muslim, etc. The menus are set in accordance with a "Master Menu" promulgated by the DOC, and food is prepared in accordance with the recipes set forth therein. Inmates actually

---

[6] There was originally some confusion about the identity of the correct defendant in this action, but the parties now agree that Robert Powell is in fact the proper defendant. (See doc. 11, 14, 15 17, 18 19).

[7] Defendant did not submit an affidavit in support of the motion for summary judgment/special report, and did not swear that the statements made in the special report were made under penalty of perjury. Furthermore, although the defendant's failure to submit any affidavits was noted in the court's order of July 13, 2006 (doc. 32), the defendant did not rectify this omission prior to the submission date of that motion.

prepare the meals under the supervision of Aramark employees and corrections officers employed by DOC.  However, corrections officers inspect the food service operation, including food being prepared and food waiting to be served, at least once per shift to ensure that it is fresh and being served at the correct temperature. Aramark employees, in turn, check the food for temperature and freshness at least five times during the process of preparing and serving each meal.  (Doc. 26 at 2-3).

Inmates in open population, those in close confinement, and corrections officers all consume food from the same source.  Meals for inmates in close confinement are requested by the corrections officers in charge of each housing unit.  The appropriate number of trays of each kind of meal are loaded on a cart and delivered to the housing units for distribution.  These meal trays do not identify the inmate who is to receive each meal, except for inmates receiving Kosher meals, because such inmates are required to sign for their meals.  Defendant states that neither he nor any Aramark employee in food service has any way of knowing which tray will go to which inmate, and that once the trays leave the food service department, neither he nor any Aramark employee in food service has any control over what happens to each tray of food, what condition the food is in when it reaches an inmate or even whether it is given to the inmate at all.  (Doc. 26 at 3).

Leftover food is handled according to regulations set forth by the DOC, which allow cooked food to be kept for three days and leftover meat to be frozen and kept for 30 days.  The defendant states in the special report that it is "common" for leftover food to be served in the staff dining room.

Defendant, as an Aramark employee, did not have any contact with inmates housed in close confinement, and he states that to his knowledge he has never met plaintiff, did not know where plaintiff is housed and does not know what diet has been prescribed for the plaintiff.  (Doc. 26 at 4)

In plaintiff's response to the special report, which also was not sworn under penalty of perjury, he contradicts many of the "factual assertions" made in the

defendant's special report. (Doc. 34). He indicates, for instance, that the defendant had seen the plaintiff at least four days a week during the alleged deprivations, and that plaintiff had even complained directly to the defendant on numerous occasions. Plaintiff also states that the assertions regarding the ratio of open population inmates to close management inmates is erroneous, as was the defendant's assertion that plaintiff was housed in close management during the time in question. Attached to the plaintiff's response are affidavits from ten inmates. Six inmates attest to having lost weight when they were eating only at the chow hall at WCI, unable to supplement their caloric intake with canteen purchases, and each mentions specific alleged deficiencies in the food service program. Three inmates describe food preparation practices in which recipes were altered, reduced, or "stretched," leading to an alleged decrease in nutritional value, and one inmate attested to receiving a nutritionally and calorically inadequate diabetic diet. Plaintiff asserts that defendant Powell allowed such practices because his goal was to cut food service costs at inmates' expense. Plaintiff acknowledges in his response that the defendant had no way to single out plaintiff's tray for deficiencies, but claims that the defendant's acts were directed at, and affected, the entire inmate population.

## Legal Analysis

### Summary Judgment Standard

On a motion for summary judgment, this court must evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendant's motion only if the record demonstrates that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56. The court must resolve all disputes and draw all inferences in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986); see also *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir.1999). Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Miller v. Harget,* 458 F.3d 1251, 1256 (11th Cir. 2006); *Bischoff v. Osceola County,* 222 F.3d 874, 876 (11th Cir. 2000); *Harris v. Ostrout*, 65 F.3d 912, 916-17 (11th Cir. 1995); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

### Frivolousness Standard

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

### Failure to State a Claim Standard

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485

(11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006); *Davis v. Monroe County Bd. Of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if plaintiff has not stated enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1973 n.14, 1974 (2007). (once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint *11 in note 14) (abrogating *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S., at 45-46, 78 S.Ct. 99.))

### Eighth Amendment Standard

Plaintiff's claim that he received nutritionally and quantitatively inadequate food while at WCI arises under the Eighth Amendment's proscription on cruel and unusual punishment. Although the United States Constitution does not require comfortable prisons, neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment governs "the treatment a prisoner receives in prison and the conditions under which he is confined. *Hellig v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted)). Claims challenging

conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety. *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986).

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), cert. denied, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985). The food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir.1996), amended by 135 F.3d 1318 (9th Cir. 1998); *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (*quoting Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)); *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977); see also *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The Constitution requires that prisoners be provided "reasonably adequate food.")

There is both an objective and subjective component of a viable Eighth Amendment claim. The first requirement, the objective component of Eighth Amendment analysis, requires:

> conduct by public officials "sufficiently serious" to constitute a cruel or unusual deprivation – one "denying 'the minimal civilized measure of life's necessities.'"

*Taylor v. v. Adams*, 221 F.3d 1254, 1257-58 (11th Cir. 2000)(citing *Wilson v. Seiter*, 501 U.S 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981))), *cert. denied*, 121 S.Ct. 774, 148 L.Ed.2d 673 (2001).

The second requirement, the subjective component of Eighth Amendment analysis, requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor* at 1258 (citing *Wilson v. Seiter*, 501 U.S. at 300, 111 S.Ct. at 2325)("The source of the intent requirement is not the predilections of this Court, but in the Eighth Amendment itself, which bans only cruel and unusual *punishment*. If the pain inflicted is not formally meted out *as punishment* by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify." (emphasis in original)). "To show the required subjective intent to punish, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Taylor* at 1258 (quoting *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291).

### Defendant's first motion for summary judgment

With respect to the defendant's first motion for summary judgment, the court found it to be undisputed that during all times relevant to the complaint Aramark provided food service operations to WCI pursuant to a contract with the DOC; that Aramark's obligations under the contract included preparing and serving meals to inmates; and that defendant Powell was a supervisory employee of Aramark. It was also undisputed that the Master Menu at WCI, if followed with properly prepared food, provides nutritionally adequate diets. The court recognized that the subject of plaintiff's complaint was the nutritional adequacy of the diet that the inmates actually consume.

Construing the allegations of plaintiff's complaint and response in a light most favorable to him, he alleged that over a prolonged period defendant Powell has

persistently provided food to inmates which did not meet the minimal nutritional standards. He further alleged that the food that was served was "watered down" or "stretched" using nutritionally inadequate ingredients; his consumption of this food over time had resulted in severe weight loss such that he was essentially being "starved to death" and suffering from adverse physical effects; that other inmates who also were unable to supplement their diets with canteen purchases had also lost weight; and that inmates who worked in food services had directly witnessed the cost (and nutrient) cutting measures. In assessing whether plaintiff's allegations constitute an objectively serious deprivation, the court noted that "[i]n general, the severity and duration of deprivations necessary to state a constitutional violation are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *Deapain v. Uphoff*, 264 F.3d 965, 974, (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 1999)); *see also Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994). Viewing the evidence in the summary judgment record in a light most favorable to plaintiff, the court found that plaintiff sufficiently alleged a deprivation severe enough to violate the Eighth Amendment.

With regard to the subjective component, the court noted that plaintiff repeatedly alleged in his complaint that the defendant acted "maliciously," although neither the source nor the target of the malice was identified. In his response to the summary judgment motion, plaintiff contended that in defendant's position as line supervisor, he had personal involvement in and control over the food quantities served as well as the products used to prepare meals. Plaintiff indicated his belief that defendant was motivated by a desire to cut costs, and in so doing he was arguably deliberately indifferent to the adverse effects that the cost-cutting measures had on the inmate population. (Doc. 34 at 4). Plaintiff noted that since

**2003 food service workers had been directed to alter recipes from the Master Menu for things as varied as grits, pancakes, instant potatoes, juice, and meat-based meals such that their nutritional value was markedly diminished, to serve food to inmates in such a way that it was "stretched," and to serve small portions.** According to plaintiff, defendant Powell, in his supervisory role, was aware of and in a position to correct these problems, but failed to do so. *See Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003) ("[t]he necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003) (internal quotation marks and citation omitted).

Defendant acknowledged that consistently serving an inmate inadequate quantities of food may rise to the level of an Eighth Amendment violation, but despite the myriad specific examples offered by plaintiff in his complaint, maintained that plaintiff's complaint did not allege facts sufficient to make this determination. Defendant claimed, without support, that if plaintiff was ever served inadequate quantities of food, it must have occurred with such infrequency as to be a random event, and could not be said to have violated any standards of common decency. He also claimed that the subjective prong of the Eighth Amendment test could not be established because plaintiff would never be able to prove that defendant was deliberately indifferent to plaintiff's needs in light of the fact that defendant did not know plaintiff, who he is or where he is housed. Plaintiff made clear in his response, however, that he was not contending that the defendant singled him out, but rather that the defendant's actions affected the entire inmate population, of which he was a part. Defendant further argued that plaintiff would be unable to prove deliberate indifference because "[plaintiff's] diet is determined by the DOC medical staff and what, when and how he eats is determined by DOC's policies and regulations without defendant's involvement and which are completely outside defendant's

control." (*Id.*). To support this assertion, he relied on the contract between Aramark and the DOC. However, defendant's argument again misapprehended plaintiff's claim, as he was not complaining about the menu, the timing of his meals or the manner in which he was required to consume them. Rather, plaintiff's complaints concerned defendant's knowing preparation and provision of food that was nutritionally inadequate such that it had adversely affected plaintiff's health.

Defendant asserted that plaintiff's allegations, balanced against the "facts" set forth in the special report, made it clear that plaintiff had not alleged and would not be able to prove an Eighth Amendment violation. The special report made reference to defendant's "sworn statement" (doc. 26 at 5), but no such statement was filed with the court, either from the defendant or any other individual with personal knowledge of the facts as indicated by Rule 56 of the Federal Rules of Civil Procedure. Thus, the court concluded that defendant Powell had not presented affirmative evidence raising a genuine dispute as to several material facts alleged in the complaint. For instance, the record did not clearly establish whether the so-called Master Menu recipes were followed, and if they were not, what effect this had on the nutritional adequacy of meals served at WCI, whether the plaintiff suffered weight loss as a result of nutritionally deficient meals or some other cause, and even what role the defendant played. Moreover, defendant failed to submit evidence to support any of the factual assertions of his special report that go beyond the matters set forth by the unsigned contract.

The court concluded that the allegations of plaintiff's complaint sufficiently established, and the Rule 56 materials he submitted amplify, that defendant was aware of the complaints of plaintiff and others about nutritionally inadequate meals, that "Master Menu" recipes were being altered to "stretch" foods, and that defendant had some authority or control over the situation. Thus, after reviewing the record in the light most favorable to the plaintiff, granting summary judgment at that juncture and on the record then before the court would have been improper.

The court further concluded that after full consideration of the evidence within the summary judgment record that plaintiff's complaint was not frivolous, and that plaintiff had presented allegations which, liberally construed in a light most favorable to him, stated an Eighth Amendment violation against defendant. The court was not swayed by defendant Powell's argument that because he and Aramark were subject to the terms of the contract it was implausible that plaintiff could have experienced the conditions of which he complained. The district court adopted the recommendation <u>without objection from the defendant</u> to either the factual or legal findings.

### Defendant's Motion to Dismiss or, Alternatively for Summary Judgment

The facts as set forth above are still of record. Defendant now moves for an order dismissing the case as frivolous, or on the ground that plaintiff's allegations, even if true, do not establish facts sufficient to give rise to a violation of plaintiff's Eighth Amendment rights.

Defendant's motion contains a listing of "undisputed facts." In this list, he enumerates food and beverage items that are "included" in the plaintiff's meals. The mere fact that plaintiff's meals may include at various times pancakes, meat, grits and potatoes, salad and vegetables, juice drink, baked goods and peanut butter, without more, proves nothing with respect to plaintiff's allegations that the meals overall are nutritionally or quantitatively inadequate. Nor does the fact that plaintiff was provided with three meals per day, six days a week. Defendant also asks the court to take judicial notice of the fact that the "plaintiff is not dead," although plaintiff alleged in the complaint that he was being starved to death. The defendant also states that plaintiff is now overweight. Again, these "facts" are not dispositive of plaintiff's claim, as plaintiff states he signed up for a different dietary program at some point after filing the complaint and admits that he regained the lost weight. Finally, defendant notes that plaintiff admits that the defendant's alleged actions

have not caused plaintiff any major medical problems. (Citing doc. 72, plaintiff's "Anticipated Opening and Closing Statement")

Defendant concedes that the constitution requires prison officials to serve prisoners nutritionally adequate food that is sufficient to preserve their health. He cites several cases for the proposition that denial of food is not a per se violation of the Eighth Amendment, noting that the court must assess the amount and duration of the deprivation. *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir.1999). See generally, *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation; *Cooper v. Sheriff of Lubbock County*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir.1977), app. after remand, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned ... of sufficient food to maintain normal health."); *Robbins v. South*, 595 F.Supp. 785, 789 (D.Mont.1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

The record reflects, and defendant does not appear to dispute, that plaintiff lost approximately 40 pounds from May of 2003 through April of 2005.[8] The defendant takes the position that this period of weight loss experienced by plaintiff, including the headaches, stomach pains, lack of concentration, pain and weakness

---

[8] As noted above, plaintiff has since regained the weight he lost. He maintains that this is because in March of 2005, he enrolled in the Jewish Dietary Accommodation meal program which provides greater caloric content. (Doc. 89). Plaintiff states that the regular meals provided 2,400 calories while the JDA program meals provided 3,000 calories. (*Id*. at 3). In another section of the same document, plaintiff asserts that the regular meals must have had less than 2,000 calories based on a chart he has composed of unknown origins. (*Id.* at 4 and exh. C).

experienced by plaintiff, does not amount to a deprivation of the minimal civilized measure of life's necessities so as to constitute a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Defendant argues that plaintiff has not offered any explanation as to what constitutes a "meager" meal or in what way the meals are nutritionally inadequate.  In fact, plaintiff has repeatedly contended that items were watered down or stretched, with a resulting loss of nutritional value, and that inadequate portions were served.  Remarkably, throughout this litigation, defendant has never denied that such measures were taken.  And, defendant contends that because plaintiff has failed to list a medical doctor or dietician as a witness, he will be unable to prove at trial that the meals were so nutritionally inadequate as to amount to a denial of the "minimal civilized measure of life's necessities."  Plaintiff responds that he cannot call such an expert as a witness, because no such expert was present to view the meals being served, and that the inmate witnesses who consumed the meager meals will provide the best evidence thereof.  (Doc. 89 at 5).

The court notes that plaintiff's circumstances have changed significantly since he filed the complaint.  He has regained the lost weight, and he is no longer at the same institution.  The fact that plaintiff has regained all of the weight he lost and now is at a normal weight for his height does not prove that the problems he complained of in the food service department did not exist.  Rather, it is not unreasonable to infer that the fact that he regained weight after changing his dietary plan supports his claim that the other meals he was served were nutritionally inadequate for the reasons alleged.  Plaintiff's allegation that meals served to inmates were comprised of "watered down" or "stretched" ingredients, such that the meals were nutritionally inadequate remains unchallenged by the defendant. Whether the facts plaintiff will be able to prove regarding the purportedly deficient meals and the physical effects he suffered as a result are sufficient to give rise to a

constitutional violation, and if so, the measure of plaintiff's damages, are questions for a jury.

**Relief Requested**

Plaintiff sought a court order enjoining the defendant from continuing the allegedly improper food preparation practices. He has since been moved to another institution, at his request (doc. 97, exh. A), so his claim for such relief against this defendant is moot. *Smith v. Allen,* 502 F.3d 1255, 1267 (11th Cir. 2007) (generally, transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief; prisoner's release and return to prison meant claim was not moot); *Zatler v.Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (inmate's release from prison mooted claim for declaratory and injunctive relief); *Tucker v. Phyfer*, 819 F.2d 1030, 1035 (11th Cir. 1987)(claim of prisoner seeking declaratory relief regarding conditions in which he was held as a juvenile became moot when he reached the age of majority); *McKinnon v. Talladega County,* 745 F.2d 1360, 1363 (11th Cir. 1984) (inmate's transfer to a different jail moots claim for declaratory and injunctive relief); *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir. 1984) (transfer from county jail to state prison mooted claims for injunctive and declaratory relief against county jailers). *Cf. Johnson v. Turpin*, 2001 WL 520804 (11th Cir. 2001) (prisoner's claim for injunctive relief not moot because he was still within the state prison system). See also *Thompson v. Carter*, 284 F.3d 411 (2nd Cir. 2002) (transfer to different facility mooted request for relief); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (same)*; Lamb v. Bumpus*, 52 Fed. Appx. 740, 741 (6th Cir. 2002) (transferred from county jail); *Crocker v. Durkin*, 53 Fed. Appx. 503 (10th Cir. 2002) (transfer to different federal penitentiary); *Mayfield v. Fleming*, 32 Fed. Appx. 116 (4th Cir. 2002).

Plaintiff also sought compensatory damages in the amount of $5,000,000. Although plaintiff has not been asked to prove damages at this point, the references in his submissions to damages are limited. He states in his Anticipated Opening

that he "will not prove through lab results that forced starvation caused him any major medical problems." (Doc. 72 at 2). He suggests in his pleading labeled "First Draft of Instructions" that a jury could find that he was "constantly hungry after consuming meager meals" and that he "constantly suffered headaches, stomach pains, lack of concentration, pain and weakness in his extremeties." (Doc. 73 at 5). He has also alleged that defendant was on notice of the deficiencies in the meal program and in a position to do something about it, but acted with either malice or deliberate indifference in failing to do so. The court finds these allegations sufficient to go to a jury.

    Accordingly, it is ORDERED:

    That defendant's motion to dismiss or, alternatively, for summary judgment (doc. 78) is DENIED.

    DONE AND ORDERED this 10th day of December, 2007.


/s/ *Miles Davis*
    **MILES DAVIS**
    **UNITED STATES MAGISTRATE JUDGE**